[Civ. No. 19837.   Second Dist., Div. One.   Nov. 10, 1953.]

HYMAN FRIEDNASH, Respondent, v. LAWRENCE WAREHOUSE COMPANY (a Corporation), Appellant.

·Wallace, Garrison, Norton & Ray and Kent A. Sawyer for Appellant.

Benjamin T. Weinstein and McLaughlin & Casey for Respondent.

SCOTT (Robert H.), J. pro tem.—Defendant appeals from an adverse judgment, following trial by court without a jury, in an action for conversion, in which an award to plaintiff was made in the sum of $26,754.89, which included $2,939.76 interest.

Plaintiff and one A. J. Perenchio entered into an agreement on November 20, 1950.   Perenchio had 50,000 gallons of wine, stored at the Village Winery in Escalon, California.   The purchase price had been 77½ cents per gallon, and Perenchio had paid $6,750 on account thereof. Plaintiff agreed to invest $12,000 of his own money and to

borrow $20,000 from a bank, which, added to Perenchio's $6,750, made the total of $38,750 purchase price of the wine. Profit on the wine when it was sold was to be divided equally between plaintiff and Perenchio. The agreement further provided as follows:

"6. Second party (plaintiff) agrees to use his credit and to arrange for the loan of Twenty Thousand Dollars ($20,-000.00) above mentioned, with the understanding that warehouse receipts for said wine shall be used as security for said loans.

"7. It is mutually agreed that warehouse receipts for said merchandise shall be issued and same used as security for the above loan and Second Party (plaintiff) *shall be designated on said warehouse receipts as the owner of said wine.*" (Emphasis added.)

The agreement also provided that said merchandise was to be sold at a time and price mutually agreeable to both parties.

The trial court found that plaintiff paid the $12,000 and procured a loan of $20,000 from Union Bank and Trust Company of Los Angeles to be applied on the purchase price of the wine; that the next day defendant signed and delivered to the bank its warehouse receipt for the wine, stating that it had received for the account of plaintiff for storage in Escalon, California, Warehouse 4261, 50,000 gallons of wine, and, "that said defendant was holding the same for the account of, and that same would be delivered upon the written order of, Union Bank & Trust Co. of Los Angeles, pledgee for Hyman Friednash."

On January 19, 1951, plaintiff repaid the $20,000 to the bank out of his own funds and directed the bank to forward its papers concerning the wine to plaintiff. On January 29, 1951, the bank signed and delivered to defendant written instructions for release of the wine, authorizing defendant to deliver it to plaintiff.

In its answer, defendant admits that on or about January 29th, Union Bank issued its order to defendant to deliver 50,000 gallons of sweet wine to plaintiff. It alleges that on February 1, 1951, it delivered 50,000 gallons "in accordance with the instructions of plaintiff's agent and/or partner." On appeal defendant admits that it delivered the 50,000 gallons upon instructions of Perenchio. It makes no claim that it delivered the wine to plaintiff, or to anyone upon his instructions or with his knowledge or consent.

The trial court found, that on March 19, 1951, defendant released and delivered pursuant to plaintiff's instructions, 6,000 gallons of wine, and on April 9, 1951, an additional 6,081 gallons of wine, both deliveries, a total of 12,081 gallons, being wine of the type and character described in the warehouse receipt. Defendant made no demand upon plaintiff for payment for these deliveries. The trial court subtracted that amount from the original total of 50,000, leaving only the remaining 37,919 gallons of the amount converted by defendant on February 1, 1951, for which plaintiff would be entitled to reimbursement.

On the sale of the 12,081 gallons which were delivered to plaintiff he received $8,184.87. Having in mind that he had put $32,000 into the venture he would have to receive $23,-815.13 out of sale of the remaining wine in order to recover his original investment. The trial court found that the remaining 37,919 gallons were worth $32,231.15, which was sufficient value to repay plaintiff and Perenchio the amount each had invested with a balance representing a profit. The award to plaintiff of $23,815.13 (to which interest was added) was an amount sufficient to repay the balance of his original investment rather than the larger amount which was the market value of the remaining wine at the time it was converted by defendant. The trial court found that defendant, in delivering this 37,919 gallons of wine, did not act upon instructions of plaintiff but delivered it to Perenchio without plaintiff's knowledge or consent.

From the entire record in the case it appears that this delivery of wine to Perenchio was without justification or excuse. The contract between plaintiff and Perenchio is not ambiguous as to the rights and powers of the parties and defendant makes no claim that it relied upon any knowledge gained from seeing it in making delivery to Perenchio. The warehouse receipt and release do not mention Perenchio. Plaintiff is the only person named in these documents. The release of January 29, 1951, recites, ''You are hereby authorized to deliver to Hyman Friednash the following Merchandise,'' (describing it).

The reporter's transcript of the trial shows no words or conduct of plaintiff which created ostensible authority in Perenchio to withdraw the wine, or estopped plaintiff to deny that there had been such authorization. There was no evidence of ratification by plaintiff of this act of Perenchio of securing the wine or of the conduct of defendant in releasing it to him.

Defendant's claim that its action was legally correct on February 1st, when it delivered the wine to Perenchio must be examined in the light of its conduct thereafter which suggests that neither on February 1st nor thereafter did defendant have any belief or grounds for belief that it was proper to turn the wine over to Perenchio, but that on the contrary it knew at all times that it could release it only on plaintiff's instructions.

We have previously noted that having delivered the entire 50,000 gallons of wine on order of Perenchio and without knowledge or approval of plaintiff, defendant thereafter on plaintiff's order, made the two deliveries to plaintiff—6,000 gallons on March 19, 1951, and 6,081 gallons on April 9, 1951. On April 4, 1951, plaintiff had a telephone conversation with defendant's representative and chief warehouse examiner, Mr. Ely. In that conversation Mr. Ely told plaintiff: "We are holders of the wine for which you took receipts. We will not release anything until we have clearance from you." Plaintiff responded: "You will release nothing until you have a clearance from me." Mr. Ely said, "As I recall it there are 30,000 gallons of wine now." Plaintiff concluded: "Yes, approximately."

It is defendant's theory that because plaintiff and Perenchio had both contributed to the purchase price and were to share in any profits, that therefore the defendant could ignore instructions given to it and responsibility accepted by it in dealing with the wine. No authority is cited which supports defendant's contention that plaintiff, as one contracting party is thus powerless to protect his investment, notwithstanding explicit written provisions in the agreement with the other party and in the instructions to the warehouse.

Judgment affirmed.

White, P. J., and Drapeau., J., concurred.

A petition for a rehearing was denied November 23, 1953, and appellant's petition for a hearing by the Supreme Court was denied January 6, 1954.